UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LACHOYA NORTON, KIM NORTON, KIM NORTON, as best friend of LAQUITA NORTON, a minor and FRED NORTON, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 4365 |
| v. | ) ) | Honorable Joan B. Gottschall |
| OFFICERS SCHMITZ, Star #17885, HAIDARI, Star #18379, SGT. B. WILLIAMS, Star #900, and THE CITY OF CHICAGO, A MUNICIPAL CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

LaChoya Norton, Fred Norton, and Kim Norton, individually and on behalf of LaQuita Norton[1], a minor, brought this excessive force suit under 42 U.S.C § 1983 against City of Chicago Police Officers Schmitz, Haidari, and Williams and the City of Chicago. The Nortons' complaint also includes claims for false arrest, conspiracy, and malicious prosecution. Before the court are the defendants' motions *in limine*.

## LEGAL STANDARD

As this court previously explained:

> "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). The court has broad discretion to rule on evidentiary questions raised in motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Nevertheless, a court should grant a motion *in limine* excluding evidence only when the movant shows that the

---

[1] Since the Nortons share the same last name, the court will refer to them individually by their first names for brevity and to avoid confusion. In addition, the plaintiffs capitalized the "c" in LaChoya's name and the "q" in LaQuita's name in the complaint, but not in their response to the defendants' motions *in limine*. The court is not sure which capitalization is correct, but will follow the capitalization set forth the plaintiffs' complaint.

evidence "is inadmissible on all potential grounds." *CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assocs.*, 411 B.R. 591, 597 (N.D. Ill. 2009) (citing *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003), and *Robenhorst v. Dematic Corp.*, No. 05 C 3192, 2008 WL 1821519, at *3 (N.D. Ill. Apr. 22, 2008)). "'[E]videntiary rulings should [ordinarily] be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *Id.* (quoting *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). Rulings on motions *in limine* are preliminary; "the district court may adjust a motion *in limine* during the course of a trial." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006) (citing *Luce*, 469 U.S. at 41-42); *Luce*, 469 U.S. at 41-42 ("[A] ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.") Accordingly, the parties may renew their objections at trial as appropriate.

*Betts v. City of Chi.*, No. 09 C 4095, --- F. Supp. 2d ----, 2011 WL 1837805, at *1 (N.D. Ill. May 13, 2011).

## ANALYSIS

### A.     Defendants' Motion *In Limine* No. 1

For their first motion *in limine*, the defendants move to bar evidence of the investigation by the Independent Police Review Authority ("IPRA") of the Complaint Register relating to this case. The plaintiffs do not oppose this motion except insofar as they would like to be able to use statements that the defendants made to the IPRA for impeachment purposes. Thus, the defendants' motion *in limine* No. 1 is granted except insofar as the plaintiffs may impeach the defendants with statements they made to the IPRA (when impeaching a witness using an IPRA statement, the attorney shall refer to the statement as a one made "in another proceeding"; the attorney shall not mention "IPRA" or "investigation"). The plaintiffs are barred from referring to the IPRA investigation, including via references to an "internal investigation."

### B.     Defendants' Motion *In Limine* No. 2

For their second motion *in limine*, the defendants move to bar evidence or testimony that police officers generally lie, conspire, participate in cover-ups, or otherwise maintain a "code of silence" to protect fellow officers accused of wrongdoing. Indeed, "generalized allegations—separate and apart from what may be true of the officers named as defendants here—are not helpful and are akin to impermissible propensity evidence." *Betts*, 2011 WL 1837805, at *5. The plaintiffs do not anticipate making generalized allegations of a "code of silence," but, to prove their conspiracy claim, do plan to present evidence that the defendants conspired to cover up the incident that gave rise to this lawsuit. Thus, the defendants' motion *in limine* No. 2 is granted insofar as the plaintiffs are barred from making generalized allegations of a police "code of silence," but otherwise denied.

C.     **Defendants' Motions *In Limine* Nos. 3-12**

The defendants' motions *in limine* Nos. 3-5, 7-10, and 12 are granted as unopposed. Therefore, the plaintiffs are barred from referring to: (a) incidents of police misconduct not involving the parties to this lawsuit, (b) any of the Chicago Police Department's General Orders, (c) any alleged misconduct on the part of or any injury allegedly caused by any non-defendant City of Chicago employees, (d) settlement negotiations, (e) how the City of Chicago trains, disciplines, monitors, or controls its police officers, (f) the prior disciplinary records (e.g. prior lawsuits, citizen's complaints) of City of Chicago officers or personnel, and (g) the titles and employer of the defendants' attorneys (e.g., references to "Corporation Counsel," "Assistant Corporation Counsel," "The City lawyers," or "the City"). In addition, all non-party witnesses shall be barred from the courtroom during opening statements and the testimony of other witnesses (the court will rely on counsel to police this exclusion order).

Motions *in limine* Nos. 6 and 11, although unopposed, are granted in part and denied in part. Motion *in limine* No. 6 is denied insofar as the defendants seek to exclude argument that the jury should send a message to the City with its verdict. As in *Saunders v. City of Chicago*, 320 F. Supp. 2d 735 (N.D. Ill. 2004), the defendants "fail to show why a jury could not 'send a message' to the city by requiring it to pay actual damages." *Id.* at 738; *see Betts*, 2011 WL 1837805, at *10. Motion *in limine* No. 6 is granted as unopposed insofar as the plaintiffs are barred from referring to the City of Chicago. Motions *in limine* Nos. 6 and 11 are granted insofar as the plaintiffs are barred from referring to indemnification, but denied insofar as the plaintiffs will be allowed to offer "evidence and testimony regarding indemnification if the defendants open the door to the same by suggesting that they will be personally responsible for paying a damages award," *Betts*, 2011 WL 1837805, at *6. *See id.* at *6-7. Because of the potential for jury confusion, testimony or evidence relating to inability to pay a punitive damages award will be viewed as opening the door.

**D.   Defendants' Motion *In Limine* No. 13**

For their thirteenth motion *in limine*, the defendants move, per Federal Rule of Evidence 701, to bar the plaintiffs from: (1) offering evidence or testimony about the cause of their injuries, (2) referring to Fred's pacemaker, and (3) speculating that Defendant Schmitz injured his hand by punching the plaintiffs. Federal Rule of Evidence 701 provides, in pertinent part, that opinion testimony by lay witnesses may not be based on "scientific, technical, or other specialized knowledge" that, per Rule 702, is the exclusive province of expert witnesses. Fed. R. Evid. 701 & 702. Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to disclose the identity of expert witnesses. In addition, Federal Rule of Civil Procedure 37(c)(1) provides that if a party fails to identify an expert witness, the party is not allowed to use that witness "unless

the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (also providing alternatives to the sanction of barring the witness on motion and opportunity to be heard).

The defendants argue that only an expert witness can opine about: (a) why Fred needed to have a pacemaker implanted, (b) what caused Fred's sick sinus syndrome and low pulse rate, and (c) what caused the injury to Defendant Schmitz' hand. The defendants further argue that since the plaintiffs have not identified any expert witnesses (although the plaintiffs did apparently identify two of Fred's treating physicians, Drs. Leonard Stallings and Anand Satyadev, as fact witnesses) and their failure to do so was not substantially justified or harmless, testimony about these topics should be barred. The plaintiffs respond that Drs. Stallings and Satyadev will not testify about causation; rather, the doctors will testify only about the treatment and diagnosis of Fred. The plaintiffs do not cite any case law in support of their ability to elicit this testimony. Instead, they argue only that this testimony is essential to their ability to prove damages. In addition, the plaintiffs note that they plan to elicit testimony that Defendant Schmitz beat them in order to prove their excessive force claim. The plaintiffs argue that they should be allowed to testify to seeing Defendant Schmitz strike the plaintiffs since that testimony is based on personal observation. The plaintiffs also argue that if the defendants suggest that the plaintiffs injured Defendant Schmitz' hand, then the plaintiffs should be allowed to elicit testimony about other possible causes of Defendant Schmitz' hand injury.

In *Caldwell v. City of Chicago*, No. 08 C 3067, 2010 WL 380696 (N.D. Ill. Jan. 28, 2010), the court held that since the plaintiff had not disclosed his treating physician as an expert witness, his physician could testify "to his personal observations, diagnoses, and treatment," but could not testify "concerning opinions that he has subsequently formed or testify concerning any causation issues." *Id.* at *4. Indeed, "[w]hen a treating physician testifies about his observation,

diagnosis and treatment of a patient, the physician is testifying about what he saw and why he did it, even though the physician's treatment and his testimony are based on his specialized knowledge and training." *Griffith v. Ne. Ill. Reg'l Commuter R.R.*, 233 F.R.D. 513, 518 (N.D. Ill. 2006), *superseded on other grounds as recognized in Crabbs v. Wal-Mart Stores, Inc.*, No. 4:09-cv-00519-RAW, 2011 U.S. Dist. LEXIS 16187, at *7-8 (S.D. Iowa Feb. 4, 2011). "In contrast, when a treating physician opines as to causation, prognosis or future disability, the physician is going beyond what he saw and why he did it." *Id.* Thus, a physician identified only as a fact witness may testify to his observations, diagnosis, and treatment. In any event, the defendants argued in reply that the testimony of Drs. Stallings and Satyadev is not based on personal observation since neither physician diagnosed Fred with sick sinus syndrome or determined that he needed a pacemaker.

The court agrees with the defendants that the cause of sick sinus syndrome, a low heart rate, and the need for a pacemaker are not topics on which the average person is knowledgeable. Thus, these are topics that are properly left to an expert witness. The plaintiffs concede that they do not intend to introduce testimony about what caused Fred to suffer from these ailments. The defendants argue that, as a result, any testimony about Fred's sick sinus syndrome, low heart rate, and pacemaker are irrelevant. The court disagrees. Therefore, the defendants' thirteenth motion *in limine* is denied insofar as the plaintiffs and their witnesses may offer testimony based on their personal observations; for example, Fred may testify as to how he was feeling before and after the incident. However, the motion is granted insofar as the plaintiffs may not offer evidence or testimony as to the cause of Fred's sick sinus syndrome, low heart rate, or need for a pacemaker. In addition, the fact that one may injure his or her hand by punching another person is a topic on which the average person is knowledgeable. Accordingly, the defendants' thirteenth

motion *in limine* is denied insofar as the plaintiffs may testify about their personal observations regarding Defendant Schmitz' conduct. The jury can infer that if he used his hand to strike the plaintiffs, he may have injured his hand while doing so.

E.  **Defendants' Motion *In Limine* No. 14**

For their fourteenth motion *in limine*, the defendants move the court to either bar the plaintiffs from calling Tamikio Howard as a witness or grant them leave to take Howard's deposition before trial. The defendants argue that the plaintiffs violated Federal Rule of Civil Procedure 26(a)(1)(i), which requires parties to disclose the subject about which a witness is knowledgeable, by failing to disclose the subject of Howard's knowledge. The defendants point out that they will be prejudiced if Howard is permitted to testify since they cannot adequately prepare to rebut her testimony. Nevertheless, the plaintiffs argue that the defendants should not be given an opportunity to belatedly depose Howard since they: (a) had an opportunity to depose Howard, (b) actually knew that she is a friend who was outside the Norton residence after the incident since four witnesses stated as much during their depositions, and (c) deposed all of the plaintiffs' witnesses except Howard. Federal Rule of Civil Procedure 37(c)(1) provides that a party shall not be allowed to use a witness that they have failed to identify "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The plaintiffs' failure to identify the topic on which Howard is knowledgeable is not substantially justified or harmless. Even if the defendants were on notice that Howard was outside after the incident, they were not aware of the expected subject of her testimony. Accordingly, the defendants' motion *in limine* No. 14 is granted insofar as the defendants are granted leave to take Howard's deposition before trial. The plaintiffs shall immediately disclose the topic of Howard's knowledge so that the defendants may properly prepare for her deposition.

## F. Defendants' Motion *In Limine* No. 15

For their fifteenth motion *in limine*, the defendants move to bar statements allegedly made by unidentified officers as hearsay. Specifically, the defendants expect LaChoya to testify that an unidentified officer told her that: (a) she was being arrested for causing Defendant Williams to have a heart attack, (b) the officers would come up with something to charge her with, and (c) a certain person was her lawyer (the unidentified officer then allegedly questioned LaChoya). Federal Rule of Evidence 801 provides, "'Hearsay' is a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. The plaintiffs argue that these statements fall under the "present sense impression" hearsay exception. Federal Rule of Evidence 803(1) provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" shall not be excluded as hearsay. Fed. R. Evid. 803(1). In any event, the fact the statement was made by an unidentified officer goes to the weight of the testimony and not its admissibility. Accordingly, the defendants' fifteenth motion *in limine* is denied. The defendant may object at trial, when the court is in a better position to evaluate whether the testimony should be excluded.

## G. Defendants' Motion *In Limine* No. 16

For their sixteenth motion *in limine*, the defendants move to bar the plaintiffs from offering evidence or testimony in support of their conspiracy claim. The defendants argue that the plaintiffs' conspiracy claim, which the defendants argue is a claim that the defendants conspired to cover up the incident, is not actionable under § 1983. The proper vehicle for dismissing claims is a motion to dismiss. However, the time for filing a motion to dismiss has long since passed. If the defendants wanted to do so, they should have so moved back in 2008.

Nevertheless, the Seventh Circuit made clear in *Cefalu v. Village of Elk Grove* that "an attempt to cover up police wrongdoing which . . . neither prevented the plaintiffs from pursuing relief nor reduced the value of their claim, [i]s not actionable under section 1983." 211 F.3d 416, 423 (7th Cir. 2000) (citing *Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995), and *Gibson v. City of Chi.*, 910 F.2d 1510, 1523-24 (7th Cir. 1990)); *see Kies v. City of Aurora*, 149 F. Supp. 2d 421, 424 (N.D. Ill. 2001) ("Although the Seventh Circuit has recognized a § 1983 claim where a defendant tries to cover-up unlawful conduct, the basis for this type of claim lies in the denial of a plaintiff's right of access to the courts. A cover-up leads to a denial of access only where the cover-up was to some extent successful." (citing *Vasquez*, 60 F.3d at 329)). The plaintiffs attempt to escape this binding Seventh Circuit precedent by responding that they are "not stating generally that the conspiracy was to cover up police wrong doing [sic]"; rather, the plaintiffs allege that the defendants conspired to violate their civil rights by using excessive force and falsely arresting them. However, as the defendants point out, the plaintiffs allege in their complaint that "Kim, LaChoya, and LaQuita Norton were arrested to cover for the officers['] beatings." In addition, the plaintiffs, in their response to the defendants' motions *in limine*, state that they "will certainly introduce testimony and evidence that a cover up and conspiracy existed." Given this, *Cefalu* is applicable.

As in *Cefalu*, "this [i]s not a case in which the plaintiffs lacked the knowledge of the facts necessary to seek redress for their asserted injuries." *Cefalu*, 211 F.3d at 423. Rather, those facts "have from the start been known to the [Nortons], as they were face-to-face participants with the police in the entire chain of events . . . ." *Id.* Thus, "a jury could not find for the plaintiffs on [any] cover-up claim because the facts that they needed to recover for their asserted injuries have always been known to them." *Id.* at 424 (citing *Thompson v. Boggs*, 33 F.3d 847,

852-53 (7th Cir. 1994), *Swekel v. City of River Rouge*, 119 F.3d 1259, 1263-64 (6th Cir. 1997), *Foster v. City of Lake Jackson*, 28 F.3d 425, 429-30 (5th Cir. 1994)). Accordingly, the defendants' sixteenth motion *in limine* is granted insofar as the plaintiffs are barred from seeking relief for an alleged conspiracy to cover up any police wrong-doing.

**H.    Defendants' Motion *In Limine* No. 17**

For their seventeenth motion *in limine*, the defendants move to bar LaChoya from testifying that an unidentified officer denied her request for medical treatment for her hand. The defendants argue that LaChoya should not be permitted to so testify because the plaintiffs have not brought a claim for the denial of medical care. However, the court is not persuaded that the LaChoya's testimony regarding the alleged denial of her request for medical treatment is irrelevant simply because the plaintiffs do not have a claim for the denial of medical care. Moreover, the court, in denying the defendants' fifteenth motion *in limine*, addressed whether the plaintiffs may testify about statements made by unidentified officers. Accordingly, this motion *in limine* is denied.

**I.    Defendants' Motion *In Limine* No. 18**

For their eighteenth and final motion *in limine*, the defendants move to bar LaChoya from testifying that she was unable to return to school at Northern Michigan University in Michigan because, after her arrest, she was not permitted to leave the state. The defendants argue that this testimony would confuse the jury since "[a]lthough she was initially placed on a curfew as part of the conditions of her bond, Plaintiff LaChoya Norton was later permitted to leave the state to attend college." The plaintiffs allege that the defendants falsely arrested LaChoya on August 8, 2006. According to the defendants, the Circuit Court of Cook County entered an order on

August 15, 2006 that granted LaChoya permission to leave Chicago on August 17, 2006 to return to college.

The plaintiffs respond that it is not appropriate for the defendants to address this issue in a motion *in limine*; rather, if LaChoya so testifies at trial, the defendants should impeach her. The court disagrees. "A motion in limine is a request for the court's guidance concerning an evidentiary question." *Mason v. City of Chi.*, 631 F. Supp. 2d 1052, 1055 (N.D. Ill. 2009). The defendants have properly moved to obtain the court's guidance, in advance of trial, on LaChoya's testimony. The plaintiffs also argue that LaChoya "should be allowed to testify about her decision not to continue her education in Michigan and instead to attend Robert Morris College here in Chicago" whether she decided to do so "because of her subjective belief that she could not leave the state, or whether the burden of travelling [sic] back and forth for the numerous court dates made it impracticable to continue her education in Michigan."

Since it appears that LaChoya was actually prohibited from leaving the City of Chicago until August 17, 2006, the defendants' eighteenth motion *in limine* is denied. LaChoya may testify that she could not return to school between August 8-16, 2006. If LaChoya testifies that she was under the impression that she could not leave even on or after August 17, 2006, the defendants may offer into evidence the court order that granted her permission to leave. Furthermore, LaChoya may testify that, because of the burden of traveling back and forth for multiple court appearances, it was impracticable for her to continue her education in Michigan.

### I.    CONCLUSION

Given the foregoing, the defendants' motions *in limine* Nos. 1-5, 7-10, 12, 14, and 16 are granted, while the defendants' motions *in limine* Nos. 6, 11, and 13 are granted in part and denied in part, and motions *in limine* Nos. 15, 17, and 18 are denied.

ENTER:

>   /s/
>   JOAN B. GOTTSCHALL
>   United States District Judge

DATED: May 27, 2011